1 | PAUL L. REIN, Esq. (SBN 43053)
CELIA MCGUINNESS, Esq. (SBN 159420)
2 | LAW OFFICES OF PAUL L. REIN
200 Lakeside Drive, Suite A
3 | Oakland, CA 94612
Telephone: 510/832-5001
4 | Facsimile: 510/832-4787
reinlawoffice@aol.com
5

Attorneys for Plaintiff
6 | FAITH TURNAGE

7

WALLACE M. TICE, ESQ.
8 | VERONICA H. GARCIA, ESQ.
LYNCH, GILARDI & GRUMMER
9 | 475 Sansome St, Suite 1800
San Francisco, CA 94111
10 | Telephone:
Facsimile:
11

Attorneys for Defendants
12 | HAYWARD ISLANDER MOTEL;
STAHL-WOOLRIDGE INVESTMENT PROPERTIES;
13 | ROBERT and VIRGINIA M. STAHL PARTNERSHIP, L.P.;
and ROBERT STAHL
14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

17 | FAITH TURNAGE,                        CASE NO.  C08-5618 BZ

18 |       Plaintiff,                     Civil Rights

19 | v.                                   CONSENT DECREE AND
                                          [PROPOSED] ORDER
20 | HAYWARD ISLANDER MOTEL;
STAHL-WOOLRIDGE
21 | INVESTMENT PROPERTIES;
ROBERT and VIRGINIA M. STAHL
22 | PARTNERSHIP, L.P.; ROBERT
STAHL; and DOES 1-10, Inclusive,
23

24 |       Defendants.
_____/
25

26 |       1.      Plaintiff FAITH TURNAGE filed a Complaint in this action on

December 17, 2008, to obtain recovery of damages for his discriminatory

experiences, denial of access, and denial of his civil rights, and to enforce

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C-08-05188 CW                                   1

S:\CASES\ISLANDER\PLEADINGS\CONSENT DECREE updated after 12-11 phone conference.wpd

1   provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.

2   sections 12101 *et seq.*, and California civil rights laws against Defendants

3   HAYWARD ISLANDER MOTEL; STAHL-WOOLRIDGE INVESTMENT

4   PROPERTIES; ROBERT and VIRGINIA M. STAHL PARTNERSHIP, L.P.; and

5   ROBERT STAHL, relating to the condition of their public accommodations as of

6   Plaintiff's visit on or about August 15, 2008, and continuing.  Plaintiff has alleged

7   that Defendants violated Title III of the ADA and sections 51, 52, 54, 54.1, 54.3

8   and 55 of the California Civil Code, and sections 19955 *et seq.* of the California

9   Health & Safety Code by failing to provide full and equal access to their facilities

10   at Hayward Islander Motel (hereinafter "Motel"), located at 29083 Mission Blvd.,

11   Hayward, California.

12        2.    Defendants  HAYWARD ISLANDER MOTEL; STAHL-

13   WOOLRIDGE INVESTMENT PROPERTIES; ROBERT and VIRGINIA M.

14   STAHL PARTNERSHIP, L.P.; and ROBERT STAHL deny the allegations in the

15   Complaint and by entering into this Consent Decree and Order do not admit

16   liability to any of the allegations in Plaintiff's Complaint filed in this action.  The

17   parties hereby enter into this Consent Decree and Order for the purpose of

18   resolving this lawsuit without the need for protracted litigation and without the

19   admission of any liability.

20

21   **JURISDICTION:**

22        3.    The parties to this Consent Decree and Order agree that the Court has

23   jurisdiction of this matter pursuant to 28 U.S.C. section 1331 for alleged

24   violations of the Americans with Disabilities Act of 1990, 42 U.S.C. sections

25   12101 *et seq.*, and pursuant to supplemental jurisdiction for alleged violations of

26   California Health & Safety Code sections 19955 *et seq.*; California Civil Code

27   sections 51, 52, 54, 54.1, 54.3, and 55; and  Title 24, California Code of

28   Regulations.

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C-08-05188 CW                                2

S:\CASES\I\ISLANDER\PLEADINGS\CONSENT DECREE updated after 12-11 phone conference.wpd

4.     In order to avoid the costs, expense, and uncertainty of protracted litigation, the parties to this Consent Decree and Order agree to entry of this Consent Decree and Order to resolve all claims regarding injunctive relief raised in the Complaint filed with this Court.  Accordingly, they agree to the entry of this Consent Decree and Order without trial or further adjudication of any issues of fact or law concerning Plaintiff's claims for injunctive relief.

WHEREFORE, the parties to this Consent Decree and Order hereby agree and stipulate to the Court's entry of this Consent Decree and Order, which provides as follows:

**SETTLEMENT OF INJUNCTIVE RELIEF:**

5.     This Consent Decree and Order shall be a full, complete, and final disposition and settlement of Plaintiff's claims against Defendants for injunctive relief that have arisen out of the subject Complaint.  The parties agree that there has been no admission or finding of liability or violation of the ADA and/or California civil rights laws, and this Consent Decree and Order should not be construed as such.

6.     The parties agree and stipulate that the corrective work will be performed in compliance with the standards and specifications for disabled access as set forth in the California Code of Regulations, Title 24-2, and Americans with Disabilities Act Accessibility Guidelines, unless other standards are specifically agreed to in this Consent Decree and Order.

a)     **Remedial Measures:**  The corrective work agreed upon by the parties are attached hereto as Attachment A.  Defendants agree to undertake all of the remedial work as set forth therein.  Defendants also agree to institute the policies attached hereto as Attachment B within 15 days.  They agree to train all current employees in the new policies within 15 days, and to train new employees in the policies at the time they are hired.

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C-08-05188 CW

3

S:\CASES\I\SLANDER\PLEADINGS\CONSENT DECREE updated after 12-11 phone conference.wpd

1    b)    **Timing of Corrective Work for Injunctive Relief:**  For

2  corrective work not requiring building permits, defendant will complete the work

3  within 45 days of entry of this Consent Decree and Order by the Court.  For work

4  requiring building permits, defendants will submit plans for all corrective work to

5  the appropriate governmental agencies within 45 days of the entry of this Consent

6  Decree and Order by the Court.  Defendants will commence work within 30 days

7  of receiving approval from the appropriate agencies.  Defendants will complete

8  the permitted work within 9 months of commencement.  In the event that

9  unforeseen difficulties prevent Defendants from completing any of the

10  agreed-upon injunctive relief, Defendants or their counsel will notify Plaintiff's

11  counsel in writing within 15 days of discovering the delay.  Defendants or their

12  counsel will notify Plaintiff's counsel in writing when all the corrective work is

13  completed, and in any case will provide a status report no later than 120 days

14  from the entry of this Consent Decree and Order.

15    c)    Defendants will notify plaintiff in writing at the end of 120

16  days as to the current status of agreed to injunctive relief, and every 90 days

17  thereafter until all access is provided.   If defendants fail to provide injunctive

18  relief on the agreed to timetable and/or fail to provide timely written status

19  notification, and plaintiff files a motion with the court to obtain compliance with

20  these terms, plaintiff reserves the right to seek additional attorney fees for all

21  compliance work necessitated by defendants' failure to keep their agreement.

## DAMAGES, ATTORNEY FEES, LITIGATION EXPENSES AND COSTS:

23    7.    The parties have not reached an agreement regarding Plaintiff's

24  claims for damages, attorney fees, litigation expenses and costs.  These issues

25  shall be the subject of further negotiation, litigation, and/or motions to the Court.

26  The parties stipulate that both parties request the Court not dismiss the case, as

27  issues of damages and attorney fees are still before the Court.

28

*[handwritten margin note:] after making reasonable meet and confer efforts to reach agreement on any issues.*

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C-08-05188 CW                    4                    S:\CASES\N\SLANDER\PLEADINGS\CONSENT DECREE updated after 12-11 phone conference.wpd

1

2 **ENTIRE CONSENT ORDER:**

3        8.      This Consent Decree and Order and Attachment A to this Consent

4 Decree and Order, which is incorporated herein by reference as if fully set forth in

5 this document, constitute the entire agreement between the signing parties on the

6 matters of injunctive relief.  No other statement, promise or agreement, either

7 written or oral, made by any of the parties or agents of any of the parties that is

8 not contained in this written Consent Decree and Order shall be enforceable

9 regarding the matters of injunctive relief described herein.  This Consent Decree

10 and Order applies to Plaintiff's claims for injunctive relief only and does not

11 resolve Plaintiff's claims for damages, attorney fees, litigation expenses and costs.

12

13

14 **CONSENT DECREE AND ORDER BINDING ON PARTIES AND**
15 **SUCCESSORS IN INTEREST:**

16        9.      This Consent Decree and Order shall be binding on Plaintiff FAITH

17 TURNAGE and upon all defendants, including  HAYWARD ISLANDER

18 MOTEL; STAHL-WOOLRIDGE INVESTMENT PROPERTIES; ROBERT and

19 VIRGINIA M. STAHL PARTNERSHIP, L.P.; and ROBERT STAHL; and any

20 successors in interest.  Defendants have a duty to so notify all such successors in

21 interest of the existence and terms of this Consent Decree and Order during the

22 period of the Court's jurisdiction of this Consent Decree and Order.

23

24 **MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542 AS**
25 **TO INJUNCTIVE RELIEF ONLY:**

26        10.      Each of the parties to this Consent Decree and Order understands and

27 agrees that there is a risk and possibility that, subsequent to the execution of this

28 Consent Decree and Order, any or all of them will incur, suffer or experience

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C-08-05188 CW

5

S:\CASES\ISLANDER\PLEADINGS\CONSENT DECREE updated after 12-11 phone conference.wpd

1  some further loss or damage with respect to the lawsuit which are unknown or

2  unanticipated at the time this Consent Decree and Order is signed.  Except for all

3  obligations required in this Consent Decree and Order, and excluding plaintiff's

4  pending claims for statutory damages, attorney fees, litigation expenses and costs,

5  the parties intend that this Consent Decree and Order apply to all such further loss

6  with respect to the lawsuit, except those caused by the parties subsequent to the

7  execution of this Consent Decree and Order.  Therefore, except for all obligations

8  required in this Consent Decree and Order, this Consent Decree and Order shall

9  apply to and cover any and all claims, demands, actions and causes of action by

10  the parties to this Consent Decree and Order with respect to the lawsuit, whether

11  the same are known, unknown or hereafter discovered or ascertained, and the

12  provisions of Section 1542 of the California Civil Code are hereby expressly

13  waived.  Section 1542 provides as follows:

14  **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT**

15  **TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM**

16  **OR HER  MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

17

18  This waiver applies to the injunctive relief aspects of this action only and does not

19  include resolution of Plaintiff's claims for damages, attorney fees, litigation

20  expenses and costs.

21       11.      Except for all obligations required in this Consent Decree and Order,

22  and exclusive of the referenced continuing claims for damages, statutory attorney

23  fees, litigation expenses and costs, each of the parties to this Consent Decree and

24  Order, on behalf of themselves, their respective agents, representatives,

25  predecessors, successors, heirs, partners and assigns, releases and forever

26  discharges each other Party and all officers, directors, shareholders, subsidiaries,

27  joint venturers, stockholders, partners, parent companies, employees, agents,

28  attorneys, insurance carriers, heirs, predecessors, and representatives of each

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C-08-05188 CW                    6                    S:\CASES\\S\LANDER\PLEADINGS\CONSENT DECREE updated after 12-11 phone conference.wpd

1    other Party, from all claims, demands, actions, and causes of action of whatever

2    kind or nature, presently known or unknown, arising out of or in any way

3    connected with the lawsuit.

4

5    **TERM OF THE CONSENT DECREE AND ORDER:**

6          12.    This Consent Decree and Order shall be in full force and effect for a

7    period of sixty-five (65) months after the date of entry of this Consent Decree and

8    Order, or until the injunctive relief contemplated by this Consent Decree and

9    Order is completed, whichever occurs later.  The Court shall retain jurisdiction of

10   this action to enforce provisions of this Consent Decree and Order for sixty-five

11   (65) months after the date of this Consent Decree and Order, or until the

12   injunctive relief contemplated by this Consent Decree and Order is completed,

13   whichever occurs later.

14

15   **SEVERABILITY:**

16          13.    If any term of this Consent Decree and Order is determined by any

17   court to be unenforceable, the other terms of this Consent Decree and Order shall

18   nonetheless remain in full force and effect.

19

20   **SIGNATORIES BIND PARTIES:**

21          14.    Signatories on the behalf of the parties represent that they are

22   authorized to bind the parties to this Consent Decree and Order.  This Consent

23   Decree and Order may be signed in counterparts and a facsimile signature shall

24   have the same force and effect as an original signature.

25

26   Dated: March 24 2010      PLAINTIFF FAITH TURNAGE

27

28                          Faith Turnage by Paul Rein
                            per authority of Ms. Turnage

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C-08-05188 CW

7

S:\CASES\\SLANDER\PLEADINGS\CONSENT DECREE updated after 12-11 phone conference.wpd

FAITH TURNAGE

Dated: 3·24 2010 , 2009   HAYWARD ISLANDER MOTEL; STAHL-
WOOLRIDGE INVESTMENT PROPERTIES;
ROBERT and VIRGINIA M. STAHL
PARTNERSHIP, L.P.; ROBERT STAHL

By: _____

APPROVED AS TO FORM:

Dated: 3·24 2010 , 2009   PAUL L. REIN, ESQ.
CELIA McGUINNESS, ESQ.
LAW OFFICES OF PAUL L. REIN

By: _____
Attorneys for Plaintiff FAITH TURNAGE

Dated: 3/24 , 2010 , 2009   WALLACE M. TICE, ESQ.
VERONICA H. GARCIA, ESQ.
LYNCH, GILARDI & GRUMMER

By: _____
Attorneys for Defendants  HAYWARD
ISLANDER MOTEL; STAHL-WOOLRIDGE
INVESTMENT PROPERTIES; ROBERT and
VIRGINIA M. STAHL PARTNERSHIP, L.P.;
and ROBERT STAHL

**ORDER**

Pursuant to stipulation, and for good cause shown, IT IS SO ORDERED.

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C-08-05188 CW

8

S:\CASES\\SLANDER\PLEADINGS\CONSENT DECREE updated after 12-11 phone conference.wpd

1   Dated:   April 20 _, 2009

2                                   _____
                                    Honorable BERNARD ZIMMERMAN
                                    United States Magistrate Judge

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE AND [PROPOSED] ORDER
CASE NO. C-08-05188 CW                                          9.

S:\CASES\I\ISLANDER\PLEADINGS\CONSENT DECREE updated after 12-11 phone conference.wpd

# ATTACHMENT A

The parties agree and stipulate that the following corrective work will be performed in compliance with the standards and specifications for disabled access as set forth in the 2007 California Code of Regulations, Title 24-2 and 1992 Americans With Disabilities Act Accessibility Guidelines, unless other standards are specifically agreed to herein. Defendants agree to install and maintain the following features:

1.  **Accessible Parking on the Site**
    a.  Provide four or five accessible parking spaces (depending on the number of parking spaces lost to create accessible spaces), including at least one that is designated as a van accessible, all of which are located along an accessible route connecting the boundary of the site, rental office, parking, guest rooms, swimming pool, laundry room and all of the other amenities on the site;
    b.  Provide a sign at each entrance to the parking lot, or at the end of each designated accessible parking space, which informs individuals that parking illegally in designated accessible parking spaces may result in having their car towed and gives individuals the location and phone number where their towed vehicles may be retrieved;
    c.  Two accessible parking places, one designated for vans, will be located closest to the Office. Two accessible parking places, one designated for vans, will be located closest to the accessible ramp between Buildings 2 and 3. If a fifth accessible parking place is required, defendants will place it where it reasonably improves disabled access to the facilities.
    d.  A fully complying curb ramp shall be provided whenever the accessible route between accessible parking spaces and the rental office, guest rooms, swimming pool, laundry room and all of the other amenities on the site crosses a curb line.
    e.  The parking spaces and their unloading zones will be configured so water does not accumulate on the surface of any part of this surface.
    f.  The van-accessible space(s) will have
        i.   a parking space that is a minimum of 9' wide by 18' long and
        ii.  an adjoining unloading zone that is a minimum of 96" wide,
        iii. be level within 2% in every direction,
        iv.  hasve a sign centered on the wall in front of the parking space or on a post mounted sign that displays the international symbol of accessibility and is a minimum of 70 square inch in size, mounted at a minimum height of 80" above the finished surface,
        v.   have a 36"- square international symbol of accessibility painted at the base of the parking space,
        vi.  have the words NO PARKING painted on the ground within the loading

        and unloading access aisle which is painted in white letters that are no less than 12"high and located so that it is visible to traffic enforcement officials.

g.     The standard accessible parking spaces will have:

    i.    a parking space that is a minimum of 9' wide by 18' long,

    ii.    an adjoining unloading zone that is a minimum of 60" wide,

    iii.    be level within 2% in every direction,

    iv.    have a sign centered on the wall in front of the parking space or on a post mounted sign that displays the international symbol of accessibility and is a minimum of 70 square inches in size, mounted at a minimum height of 80" above the finished surface,

    v.    have a 36"-square international symbol of accessibility painted at the base of the parking space,

    vi.    have the words NO PARKING painted on the ground within the loading and unloading access aisle which is painted in white letters that are no less than 12"high and located so that it is visible to traffic enforcement officials.

2.    **Accessible Route Between the Office and All Amenities on Site**

Create an accessible route connecting the rental office, parking, guest rooms, swimming pool, and all of the other amenities on the site that includes:

a.    A striped walkway that is separated from the vehicular driveway by bollards, a raised sidewalk or other design solution that clearly isolates the path of travel from the drive aisle,

    i.    has no slope along its entire length that exceeds 5.0% (including as it crosses speed bumps or swales and areas along the sidewalks outside the guest rooms), unless the grade transition is treated as a fully complying ramp with compliant landings at the top and bottom of each run, a raised curb along unprotected edges and handrails on both sides of the ramp,

    ii.    has no slope along its entire length in excess of 8.33%,

    iii.    has no cross slope along its entire length that exceeds 2.0%,

    iv.    does not go behind any parked cars at any point along its entire length, and

    v.    has no vertical changes in elevation along its entire length that exceeds 1/2",

    vi.    has no gap or other opening along the entire route that exceeds 1/2" even if it is oriented across the dominant direction of travel,

    vii.    **Wherever the path of travel needs to be replaced because of excessive slope, cross-slope, vertical changes in elevation, or gaps, or in order to create a path of travel where no path of travel currently exists, the new path of travel will have a 48" clear width.**

      viii.    has no overhead obstruction along its entire length, including unprotected overhanging stairways, that projects more than 4" off the wall and have a bottom edge that is set lower than 80" above the finished surface or relocate the accessible route so it goes around that overhanging obstruction by placing an object underneath the overhead obstruction to prevents a pedestrian from walking into the area beneath it,

      ix.    has a 3" high raised curb along the edge of any portion of the path of travel that has a vertical drop off in excess of 4", except along those portions of the route that are located along a driveway or street,

      x.    a stable, firm and slip-resistant surface along its entire length of an accessible route.

  b.    **The set of stairs at the main entry to each building shall:**

      i.    have **compliant** handrails on each side,

      ii.    a **compliant** 2" wide clearly contrasting stripe set 1" back from the nosing of each riser of those stairs and

      iii.    **Compliant signage will be placed throughout the Motel directing disabled persons to the accessible stairway in each building,**

  c.    the outside of each accessible entry or exit door shall have a compliant exterior landing that is level within 2.0% in any direction and extends a minimum of 60" for out-swinging doors or 48" for in-swinging doors, as measured perpendicular to the face of the closed door.

3.    **Rental Office**

Provide a fully compliant rental/registration office for the facility that includes:

  a.    A push plate at the bottom of the push side of the entry door that is a smooth uninterrupted surface extending a minimum of 10" above the finished surface, including the removal of any obstruction in this area (including the removal of the kick down hold open device in this location),

  b.    adjust or replace the door closer so the maximum force required to open the door is a maximum of 5 pounds of pressure,

  c.    provide an accessible route throughout the lobby that connects all areas where a guest is permitted to go that has a minimum width of 36" clear,

  d.    ~~provide a lower section of counter at the check in window~~ that has a maximum height of 34" above the finished floor, a minimum length of 36" that is free of any obstructions and kneespace underneath that extends a minimum of 27" above the finished floor.

*Provide a lowered Shelf and opening*

4.    **Telephones**

Defendants will ensure that the company which leases the telephones will **remove one telephone and lower the other** so that the highest operable mechanism is set at a maximum of 54" above the finished floor.

5.    **Swimming Pool**

Provide a fully compliant swimming pool on the site that includes:

a.    an accessible route connecting the boundary of the site, rental office, parking, guest rooms, swimming pool, laundry room and all of the other amenities on the site as specified in paragraphs #1 and #3 above,

b.    has at least one pool entry gate with:

i.    a push plate at the bottom of the push side of the entry gate that is a smooth uninterrupted surface extending a minimum of 10" above the finished surface,

ii.   lever-type hardware including the locking mechanism that does not require grasping, pinching or twisting of the wrist to operate,

iii.  hardware that is set at a maximum height of 44" on center above the finished surface,

iv.   a complying landing on the swing side of the gate that is a minimum of 60" measured perpendicular to the face of the closed gate and extends a minimum of 24@ beyond the strike edge of the gate,

v.    fully complying landings on both sides of the gate that are level within 2.0% in any direction,

vi.   a gate that requires a maximum push pressure of 5 pounds of push pressure to open,

c.    a fully complying, independently-operable pool lift that is **permanently** located adjacent to the edge of the pool and has a compliant 30" by 48" clear floor space next to it that is level within 2.0% in any direction.

d.    a compliant path of travel around the pool that is a minimum of 36" in clear width, a maximum cross slope of 2.0% and is stable, firm and slip-resistant.

6.    **Accessible Guest Room with Kitchen**

Provide one accessible guest room with a roll in shower which

a.    complies with section 9.1.2 of the ADA Accessibility Guidelines,

b.    has an entry door having

i.    a push plate at the bottom of the push side of the door that is a smooth uninterrupted surface extending a minimum of 10" above the finished surface,

ii.   lever-type hardware including the locking mechanism that does not require grasping, pinching or twisting of the wrist to operate,

iii.  door hardware (including security locks on the interior side of the door) that is set at a maximum height of 44" on center above the finished

surface,

iv.    a complying landing on the push side of the door that is a minimum of 48" measured perpendicular to the face of the closed door ,

v.    a clear landing on the pull side of the door of 60" measured perpendicular the face of the closed door and extends a minimum of 24" beyond the strike edge of the door,

vi.    a threshold that is a maximum of 1/2" above the finished surface on each side of the door,

vii.    a door closer that requires a maximum push pressure of 5 pounds of push pressure to open,

viii.    a peep hole in the door that is set at a height between 36" and 42" above the finished floor,

c.    provides an accessible route into and throughout the room that is a minimum of 36" wide and connects the entry door with the bathroom, kitchen and all each of the devices, elements, fixtures, switches and controls within the room

d.    provides a 60-inch diameter turning circle or the t-shaped turnaround space on the interior of the room that complies with Figure 3 of the ADA Accessibility Guidelines which does not overlap the door swing or project under any fixture,

e.    has a 36" wide clear floor space between the beds,

f.    has a 30" by 48" clear floor space adjacent to each of the devices, elements, fixtures, switches and controls within the room (including the informational signage, door hardware, a peep hole, light switches, lamps, television, range, refrigerator, sink, counters, clothes rods and shelves in closets, desk, thermostat, heater or air conditioner unit, beds, curtains and any other elements, switches or controls within the room),

g.    has no operable mechanism, switches or controls that are mounted higher than 48" above the finished floor if it is a front approach mechanism or 54" above the finished floor is it is a side approach mechanism,

h.    has no switches, controls or operable mechanisms in the room that require the user to grasp, pinch, or twist their wrist to operate the mechanism (including door hardware, light switches, lamps, television, range, refrigerator, sink, thermostat, heater or air conditioner unit, batons for the curtains and any other elements with switches or controls within the room),

i.    a range **cook top** in the kitchenette that has

    i.    a 30" by 48" clear floor space adjacent to the fixture,

    ii.    controls mounted on the front face of the fixture,

    iii.    a top surface which is set no higher than 34" above the finished floor and

    iv.    rear burners that are offset from the front burners,

j.    **A microwave oven in an accessible location with accessible controls;**

k.    a refrigerator in the kitchenette that

    i.    is ~~either a side by side-type fixture or has at least 50% of the freezer compartment~~ set at a maximum height of 54" above the finished floor and

    ii.    has doors that have a clear floor space in front of the unit that extend 60"

    measured perpendicular to the face of the closed door and 18" beyond the strike edge of the door,

l. A kitchenette sink that has

  i. a 30" by 48" clear floor space adjacent to the fixture which is oriented for a front approach,

  ii. the rim or counter edge mounted no higher than 34" above the finished floor,

  iii. knee space underneath the fixture that has a minimum height of 29" above the finished floor at the front face and a minimum height of 27" above the finished floor 8" back from the front face of the fixture,

  iv. insulation on the hot water feed and the drain pipe underneath this sink,

  v. the front face of the p-trap set at a maximum distance of 6" from the face of the wall that the fixture is mounted on and

  vi. lever-type hardware that does not require grasping, pinching and/or twisting of the wrist to operate,

m. kitchenette counters that are set at a maximum height of 34" above the finished floor and have a minimum length of 36",

n. a desk that provides knee space underneath the fixture that is at least 27" high, 30" wide and extends a minimum of 19" back from the front face of the amenity,

o. a closet which has:

  i. the clothes rod and the overhead shelf set at a height of 48 inches above the finished floor if the 30 inches side of the clear floor ground space is adjacent to the wall,

  ii. is mounted at a maximum height of 54 inches above the finished floor if the 48 inches side of the clear floor ground space is adjacent to the rod

  iii. a sliding door with lever-type hardware including the locking mechanism that does not require grasping, pinching or twisting of the wrist to operate,

  iv. door hardware that is set at a maximum height of 44" on center above the finished surface,

  v. a complying landing on both sides of the door that is a minimum of 48" measured perpendicular to the face of the closed door,

  vi. a threshold that is a maximum of 1/2" above the finished surface on each side of the door,

  vii. a door closer that requires a maximum push pressure of 5 pounds of push pressure to open

p. a patio that is level with a maximum slope of 2.0% in any direction and has no drop off along any edge that is not protected by a wall or railing,

q. If the unit has a connecting door, provide fully complying doors, with

  i. lever-type hardware including the locking mechanisms that do not require grasping, pinching or twisting of the wrist to operate,

  ii. door hardware (including security locks on either side of the door) that is set at a maximum height of 44" on center above the finished surface,

  iii. a complying landing on the push side of the door that is a minimum of 48"

measured perpendicular to the face of the closed door and a clear landing
on the pull side of the door of 60"  measured perpendicular the face of the
closed door and extends a minimum of 18"  beyond the strike edge of the
door,

iv.    a threshold that is a maximum of 1/2" above the finished surface on each
side of the door, and

v.    a door closer that requires a maximum push pressure of 5 pounds of push
pressure to open

r.    has a fully compliant bathroom that includes:

i.    an entry door with a 32" minimum clear opening,

ii.    lever-type hardware including the locking mechanism that does not require
grasping, pinching or twisting of the wrist to operate,

iii.    a complying landing on the push side of the door that is a minimum of 48"
measured perpendicular to the face of the closed door

iv.    a clear landing on the pull side of the door of 60" measured perpendicular
the face of the closed door and extends a minimum of 18" beyond the
strike edge of the door,

v.    a 60-inch diameter turning circle or the t-shaped turnaround space on the
interior of the room that complies with Figure 3 of the ADA Accessibility
Guidelines, which does not overlap the door swing or project under any
fixture,

vi.    a toilet that is set exactly 18 inches on center from the adjacent wall, has a
seat height of 17 inches to 19 inches above the finished floor, has the flush
valve mounted on the wide side of the fixture, has a minimum clear floor
space of 48" in front of the fixture, on the wide side of the fixture a 32"
wide clear floor space between the side of the fixture and a wall or a 28"
clear floor space between the side fixture and a sink mounted on the same
wall,

vii.    a 36" long minimum grab bar mounted on the wall behind the fixture and a
42" long grab bar on the wall beside the toilet which has a gripping surface
with a diameter of 1-1/4" to 1-1/2"  or has a shape that provides an
equivalent gripping surface, that are mounted at a height of 33" on center
above the finished floor and have a knuckle space between the face of the
adjacent wall and the interior face of the grab bar of exactly 1-1/2"

viii.    a sink with a 30" by 48" clear floor space adjacent to the fixture which is
oriented for a front approach, has the rim or counter edge mounted no
higher than 34" above the finished floor, knee space underneath the fixture
that has a minimum height of 29" above the finished floor at the front face
and a minimum height of 27" above the finished floor 8" back from the
front face of the fixture, has insulation on the hot water feed and the drain
pipe underneath this sink, has the front face of the p-trap set at a maximum
distance of 6" from the face of the wall that the fixture is mounted on and
has lever-type hardware that does not require grasping, pinching and/or

twisting of the wrist to operate,

ix.    a mirror set with the bottom of the reflective surface set no higher than 40" above the finished surface,

x.    the hair dryer and any dispenser or operable mechanism set no higher than 40" on center above the finished floor,

xi.    a roll in shower unit having

    (1)    either has a dimension of 30" by 60" or a dimension of 36" square,

    (2)    a fold down seat in the 30" by 60" shower stall that is mounted on the wall adjacent to the control wall at a height ranging between 17" to 19" above the finished floor,

    (3)    a fold down seat in the 36" square shower stall that is mounted on the wall opposite the control wall at a height ranging between 17" to 19" above the finished floor,

    (4)    grab bars that comply with section 4.21.4 of the ADA Accessibility Guidelines and are mounted between 33" and 36" above the finished floor,

    (5)    operational controls that do not require grasping, pinching or twisting of the wrist to operate and are mounted no higher than 48" above the finished floor,

    (6)    a shower hose and wand that has a minimum length of 60" which can be used both as a fixed shower head and as a hand-held shower wand,

    (7)    a curb that is no higher than 1/2" above the finished floor.

s.    An accessible clothes washer and dryer.

**7.    Accessible Room: Standard Room**

**Provide one accessible guest room which**

a.    **complies with section 9.1.2 of the ADA Accessibility Guidelines,**

b.    **has an entry door having**

i.    **a push plate at the bottom of the push side of the door that is a smooth uninterrupted surface extending a minimum of 10" above the finished surface,**

ii.    **lever-type hardware including the locking mechanism that does not require grasping, pinching or twisting of the wrist to operate,**

iii.    **door hardware (including security locks on the interior side of the door) that is set at a maximum height of 44" on center above the finished surface,**

iv.    **a complying landing on the push side of the door that is a minimum of 48" measured perpendicular to the face of the closed door ,**

v.    **a clear landing on the pull side of the door of 60" measured perpendicular to the face of the closed door and extends a minimum of 24" beyond the strike edge of the door,**

vi.    **a threshold that is a maximum of 1/2" above the finished surface on each side of the door,**

      vii.    a door closer that requires a maximum push pressure of 5 pounds of push pressure to open,

      viii.   a peep hole in the door that is set at a height between 36" and 42" above the finished floor,

c.    provides an accessible route into and throughout the room that is a minimum of 36" wide and connects the entry door with the bathroom,and  each of the devices, elements, fixtures, switches and controls within the room

d.    provides a 60-inch diameter turning circle or the t-shaped turnaround space on the interior of the room that complies with Figure 3 of the ADA Accessibility Guidelines which does not overlap the door swing or project under any fixture,

e.    has a 36" wide clear floor space between the beds,

f.    has a 30" by 48" clear floor space adjacent to each of the devices, elements, fixtures, switches and controls within the room (including the informational signage, door hardware, a peep hole, light switches, lamps, television,sink, clothes rods and shelves in closets, desk, thermostat, heater or air conditioner unit, beds, curtains and any other elements, switches or controls within the room),

g.    has no operable mechanism, switches or controls that are mounted higher than 48" above the finished floor if it is a front approach mechanism or 54" above the finished floor is it is a side approach mechanism,

h.   has no switches, controls or operable mechanisms in the room that require the user to grasp, pinch, or twist their wrist to operate the mechanism (including door hardware, light switches, lamps, television,, sink, thermostat, heater or air conditioner unit, batons for the curtains and any other elements with switches or controls within the room),

i.    a desk that provides knee space underneath the fixture that is at least 27" high, 30" wide and extends a minimum of 19" back from the front face of the amenity,

j.    a closet which has:

      i.    the clothes rod and the overhead shelf set at a height of 48 inches above the finished floor if the 30 inches side of the clear floor ground space is adjacent to the wall,

      ii.   is mounted at a maximum height of 54 inches above the finished floor if the 48 inches side of the clear floor ground space is adjacent to the rod

      iii.   a sliding door with lever-type hardware including the locking mechanism that does not require grasping, pinching or twisting of the wrist to operate,

      iv.   door hardware that is set at a maximum height of 44" on center above the finished surface,

      v.    a complying landing on both sides of the door that is a minimum of 48" measured perpendicular to the face of the closed door,

     vi.    a threshold that is a maximum of 1/2" above the finished surface on each side of the door,

     vii.   a door closer that requires a maximum push pressure of 5 pounds of push pressure to open

**k.**    a patio that is level with a maximum slope of 2.0% in any direction and has no drop off along any edge that is not protected by a wall or railing,

**l.**    If the unit has a connecting door,  provide fully complying doors, with

     i.    lever-type hardware including the locking mechanisms that do not require grasping, pinching or twisting of the wrist to operate,

     ii.   door hardware (including security locks on either side of the door) that is set at a maximum height of 44" on center above the finished surface,

     iii.  a complying landing on the push side of the door that is a minimum of 48" measured perpendicular to the face of the closed door and a clear landing on the pull side of the door of 60"  measured perpendicular the face of the closed door and extends a minimum of 18"  beyond the strike edge of the door,

     iv.   a threshold that is a maximum of 1/2" above the finished surface on each side of the door, and

     v.    a door closer that requires a maximum push pressure of 5 pounds of push pressure to open

**m.**   has a fully compliant bathroom that includes:

     i.    an entry door with a 32" minimum clear opening,

     ii.   lever-type hardware including the locking mechanism that does not require grasping, pinching or twisting of the wrist to operate,

     iii.  a complying landing on the push side of the door that is a minimum of 48" measured perpendicular to the face of the closed door

     iv.   a clear landing on the pull side of the door of 60" measured perpendicular the face of the closed door and extends a minimum of 18" beyond the strike edge of the door,

     v.    a 60-inch diameter turning circle or the t-shaped turnaround space on the interior of the room that complies with Figure 3 of the ADA Accessibility Guidelines, which does not overlap the door swing or project under any fixture,

     vi.   a toilet that is set exactly 18 inches on center from the adjacent wall, has a seat height of 17 inches to 19 inches above the finished floor, has the flush valve mounted on the wide side of the fixture, has a minimum clear floor space of 48" in front of the fixture, on the wide side of the fixture a 32" wide clear floor space between the side of the fixture and a wall or a 28" clear floor space between the side fixture and a sink mounted on the same wall,

     vii.  a 36" long minimum grab bar mounted on the wall behind the fixture and a 42" long grab bar on the wall beside the toilet which has a

gripping surface with a diameter of 1-1/4" to 1-1/2" or has a shape that provides an equivalent gripping surface, that are mounted at a height of 33" on center above the finished floor and have a knuckle space between the face of the adjacent wall and the interior face of the grab bar of exactly 1-1/2"

viii.    a sink with a 30" by 48" clear floor space adjacent to the fixture which is oriented for a front approach, has the rim or counter edge mounted no higher than 34" above the finished floor, knee space underneath the fixture that has a minimum height of 29" above the finished floor at the front face and a minimum height of 27" above the finished floor 8" back from the front face of the fixture, has insulation on the hot water feed and the drain pipe underneath this sink, has the front face of the p-trap set at a maximum distance of 6" from the face of the wall that the fixture is mounted on and has lever-type hardware that does not require grasping, pinching and/or twisting of the wrist to operate,

ix.     a mirror set with the bottom of the reflective surface set no higher than 40" above the finished surface,

x.      the hair dryer and any dispenser or operable mechanism set no higher than 40" on center above the finished floor,

xi.     An accessible bath tub with accessible fixtures; and grab bars.

E:\Islander\ATTACHMENT A during mediation.wpd

11

# ATTACHMENT B: POLICIES

1.  Defendants will institute the written internal policy designated B-1 and incorporated herein by reference.  All current employees will be trained in the correct response to a person with a service animal, and any employee hired after this Consent Decree is signed will also be so trained.

2.  So long as Defendants have a policy of asking persons with pets to sign a written pet policy, defendants may provide all disabled persons with service animals with the written agreement designated B-2  and incorporated herein by reference.  Disabled persons will not be asked to sign any other agreement pertaining to service animals, nor any agreement regarding the keeping of pets at the Motel, unless the person also has a pet.

3.  **When completed, the accessible standard sleeping room referred to in Exhibit A shall be rented at the same rate as other standard sleeping rooms in the Motel.**

4.  **When completed, the accessible room with kitchen referred to in Exhibit A shall be rented at the same rate as other rooms with kitchens in the Motel.**

INTER-OFFICE MEMORANDUM

TO: ALL EMPLOYEES
FROM: MANAGEMENT
DATE:  December 00, 2009
RE:  DISABLED GUEST AND SERVICE ANIMAL POLICY

---

In an effort to best accommodate and meet the needs of our disabled guests with service animals, we ask that you review and apply the following rules when dealing with disabled guests and their service animals:

**The ADA:**     Under the Americans with Disabilities Act (ADA), privately owned businesses that serve the public, such as restaurants, hotels, retail stores, taxicabs, theaters, concert halls, and sports facilities, are prohibited from discriminating against individuals with disabilities.  The ADA requires these businesses to allow people with disabilities to bring their service animals onto business premises in whatever areas customers are generally allowed.

**Service Animal:**     The ADA defines a service animal as <u>any</u> guide dog, signal dog, or other animal individually trained to provide assistance to an individual with a disability.  If they meet this definition, animals are considered service animals under the ADA, regardless of whether they have been licensed or certified by a state or local government.  A service animal is <u>not</u> a pet.

**Applicable Rules/Policies:**

1.  You may not ask a disabled guest with a service animal for documentation that his/her animal is a service animal.  You must take their word as given.

2.  If a disabled guest requests reasonable accommodations for their needs with a service animal, you must accept that request.

3.  You may not charge a fee or room deposit to a disabled person with a service animal; however, disabled persons may be held responsible for damage caused by their service animals.

4.  You may not impose any requirement upon a disabled person with a service animal which is not required of a non-disabled person.

5.  The care or supervision of a service animal is solely the responsibility of his or her owner.  You are not required to provide care or food or a special location for the animal.

6.  You may exclude any animal, including a service animal, from our facility when that animal's behavior poses a direct threat to the health or safety of others.  You may not make assumptions, however, about how a particular animal is likely to behave based on your past experience with other animals.  Each situation must be considered individually.

**B1**

7. Although a public accommodation may exclude any service animal that is out of control, we should give the individual with a disability who uses the service animal the option of continuing to enjoy its goods and services without having the service animal on the premises.

8. The service animal must be permitted to accompany the individual with a disability to all areas of the facility where customers are normally allowed to go.  An individual with a service animal may not be segregated from other guests.

Date:

I have reviewed the information and policies set forth above and will do my best to institute the policies while employed by the Islander Motel.

_____
Signature

# Islander Motel

HAYWARD

### SERVICE ANIMAL POLICY
### Hayward Islander Motel

In an effort to best accommodate our disabled guests with service animals, we request that you observe the following guidelines:

1) Service animals must be with their owners at all times in the public areas inside and outside the hotel, so as not to interfere with the safety of other motel guests.

2) If your service animal is being left in the room unattended, it must be in a kennel, and/or restrained. A contact number must be left at the front desk in the event your service animal becomes agitated.

3) It is the responsibility of the service animal's owner to clean up after the service animal in the rooms and around the property, and to insure that service animals do not "unreasonably" disturb other guests.

4) Rooms with service animals must be made available for maid service. Please arrange a convenient time with the front desk agent when you will be out of your room with your service animal, so that our housekeeping team can service your room.

5) Any damages to the room caused by your service animal will be added to your credit card, and/or billed to you at the time of departure.

Thank you for your cooperation. Your signature below indicates you agree to abide by the above guidelines.

_____    _____    _____
Guest Signature                                    Date                Room #

**B2**

HAYWARD ISLANDER
29083 Mission Boulevard
Hayward, CA 94544
(510) 538-8700